**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JERRY SANDERS, Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:19-CV-501-TLS-JPK |
| ANDREW M. SAUL, Commissioner of Social Security Administration, Defendant. | ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jerry Sanders on December 27, 2019, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security denying Plaintiff's claims for disability insurance benefits and supplemental security income [DE 19]. The Commissioner filed a Memorandum in Support of Commissioner's Decision [DE 22], and Plaintiff filed a Reply [DE 23].

On June 15, 2020, District Court Judge Theresa L. Springmann entered an Order [DE 16] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

## PROCEDURAL BACKGROUND

On June 29, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning June 3, 2013, due to the following

impairments: three lower lumbar bulging discs, thoracic right paracentral T4-T5 disc protrusion, scattered small Schmorl's nodes, COPD (Chronic Obstructive Pulmonary Disease) with biapical bullous disease and scarring, osteoporosis, and migraines. (AR 112-113, 122-23).[1] The claims were denied initially and on reconsideration on August 29 and December 5, 2016, respectively. (AR 112-31, 139-60). Plaintiff then requested a hearing, which was held before an Administrative Law Judge (ALJ) on June 27, 2018. (AR 41, 186). During the hearing, Plaintiff amended his alleged onset date to November 8, 2014. (AR 50, 262). On October 1, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since November 8, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disorder, emphysema, lumbar degenerative disk disease, and osteoporosis.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in] 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2014, through the date of this decision.

(AR 29-34).

Plaintiff sought review by the Appeals Council, which granted review and modified the RFC determined by the ALJ. (AR 1-11). Although the Appeals Council agreed with the ALJ that Plaintiff can perform light work with occasional balancing, stooping, kneeling, and climbing of ramps, stairs, ladders, ropes, and scaffolds, it concluded that Plaintiff required additional non-exertional limitations regarding exposure to hazards and a sit-stand option. (AR 6). In a decision dated November 5, 2019, the Appeals Council therefore further limited Plaintiff's RFC to require: (1) avoidance of concentrated exposure to hazards such as moving mechanical parts and unprotected heights, and of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and (2) a sit/stand option where he is able to alternate sitting and standing, standing for 10 minutes and sitting for 15 minutes, alternating throughout the workday without being off task. (*Id.*). According to the Appeals Council's decision, these additional limitations were supported by Plaintiff's medical record and the hearing testimony of a Vocational Expert (VE) confirming that Plaintiff could still perform the jobs listed in the ALJ's decision (office helper, order caller, and mail clerk) even with these additional RFC limitations. (*Id.* (citing AR 30-34, 87-90)). With these additional findings, the Appeals Council again determined that Plaintiff was not

under a disability as defined in the Social Security Act through the date of the ALJ's hearing decision, October 1, 2018. (AR 7-9).

Pursuant to 20 CFR §§ 404.981 and 416.1481, the Appeals Council's November 2019 decision became the final decision of the Commissioner, subject to federal court review. Plaintiff then filed this civil action seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the Agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the

burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

**ANALYSIS**

Plaintiff asserts four grounds for reversal of the ALJ's and Appeals Council's decisions. He contends: (1) the ALJ ignored substantial evidence regarding Plaintiff's migraines; (2) the Appeals Council erred by including a sit-stand option in the RFC that did not sufficiently account for Plaintiff's physical limitations; (3) the ALJ disregarded evidence otherwise contrary to the RFC determination; and (4) the ALJ improperly relied upon Plaintiff's daily activities to discount his physical limitations. (P's Br. 10-18, ECF No. 19). For the reasons explained below, the Court recommends remand to address the first, second, and fourth issues.

**I. The ALJ's Consideration of Plaintiff's Migraines**

Plaintiff first argues that the ALJ erred in assessing the severity of his lytic lesions and migraine headaches, and in failing to accommodate those impairments in his RFC. As noted above, while the ALJ found Plaintiff had several severe impairments (COPD, emphysema, lumbar degenerative disc disease, and osteoporosis), she determined that Plaintiff's lytic lesions and migraine headaches "no more than minimally affect [his] ability to perform basic work functions and are non-severe impairments." (AR 29). The ALJ based this conclusion on subsidiary findings that Plaintiff "has been prescribed medication" for these impairments, and "when taking the medication as prescribed, his lytic lesions and migraines cause no symptoms." (*Id.*). Although the Appeals Council expressed no view regarding whether these impairments are controlled with medication, it too concluded that Plaintiff's lytic lesions and migraines are non-severe. (AR 5).

As Plaintiff explains, the ALJ cited two exhibits to support her conclusion that medications completely controlled Plaintiff's migraine symptoms – Exhibits B6F and B9F (AR 536-57, 578-

658) – although the ALJ cited no particular passages in these Exhibits, and they comprise over 100 pages. (*See* P's Brief at 11, ECF No. 19 (citing AR 29)). According to Plaintiff, "these exhibits offer no discussion as to the presence of the claimant's symptoms in relation to his medication regimen whatsoever," and to the contrary, they document "numerous complaints of migraines and headaches, including one instance where the claimant stated that he experiences headaches every day that are an 8 out of 10 on a 10-point pain scale." (*Id*. at 11-12 (citing AR 578-79, 601)). Plaintiff also identifies other records corroborating his claims of chronic migraine headaches, including a 2016 MRI indicating "abnormalities of the right sphenoid bone, which one of [Plaintiff's] physicians opined could be the cause of his headaches." (*Id*. (citing AR 519); *see also* AR 544-45, 566, 580-81, 586-87, 589-90, 592-93, 595-96, 598-99, 604-05, 607-08, 610-11, 613-14, 617, 619-20, 622-23, 627-28, 630-31, 633-34, 636-37, 639-40, 642-3, 645-46).

The Commissioner does not dispute Plaintiff's argument that his medical record documents his migraine symptoms. (*See* D's Mem. at 5-7, ECF No. 22). Nor does the Commissioner identify anything in the Exhibits cited by the ALJ or any other portions of Plaintiff's medical record to support the ALJ's finding that Plaintiff's lytic lesions and migraine headaches are controlled with medication. (*Id.*). Instead, the Commissioner argues that the Exhibits cited by the ALJ "provide substantial evidence supporting the ALJ's factual finding that the impairments were non-severe," and "even if Plaintiff were to establish any error in the ALJ's identification or classification of impairments at step two, it would be harmless because the ALJ and the Appeals Council found that Plaintiff had other severe impairments, and properly moved past step two of the sequential evaluation process." (*Id*. at 6-7 (citing AR 5-9, 29-35)). The Court agrees that any error in failing to find a severe impairment at step two would be harmless where (as here) the ALJ and Appeals Council found other severe impairments and proceeded with the sequential analysis. *See Ray v.*

*Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) ("Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."). But as Plaintiff argues, all limitations resulting from medically determinable impairments must nevertheless be considered when determining a claimant's RFC, even those that are non-severe. (P's Brief at 12, ECF No. 19). *See also Ray*, 915 F.3d at 492 ("Either way, the ALJ must later consider the limitations imposed by all impairments, severe and non-severe."). The severity of an applicant's conditions therefore affects other aspects of an ALJ's disability analysis, including the determination of residual functional capacity, "and thus, no matter what happens at step two, a correct assessment remains important." *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012).

Here, the ALJ made no RFC accommodation for Plaintiff's migraines after finding they "cause no symptoms" when Plaintiff takes his medications as prescribed. (AR 29). But the Commissioner has identified no support for that finding, and the Court sees none that is readily apparent. *See Noonan v. Saul*, 835 F. Appx 877, 880 (7th Cir. 2020) ("While the standard is deferential, we will not 'scour the record for supportive evidence.' . . . Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her ultimate determination." (quoting *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)). To the contrary, Plaintiff has identified several medical records documenting his migraine complaints, including at least one record indicating that he experiences daily migraine headaches causing pain at a level of 8 out of 10. (P's Brief at 11-12, ECF No. 19). Plaintiff also testified that he sometimes experienced two or three migraines a week that were so bad he would throw up and remain in a dark room. (AR 74). And while the Commissioner has identified other records indicating "no acute intracranial process" (D's Mem. at 6-7), they do nothing to negate Plaintiff's documented migraine symptoms or the medical opinion potentially linking them to the sphenoid bone erosion revealed

in Plaintiff's 2016 MRI (AR 566). *See Moon*, 763 F.3d at 722 ("unremarkable" diagnostic tests "rule out other possible causes of headache – such as a tumor – meaning that an unremarkable MRI is completely consistent with a migraine diagnosis").

The ALJ failed to grapple with this evidence, and instead found "no symptoms" caused by Plaintiffs lytic lesions and migraines without any accurate citation of record support. As a result, the ALJ failed to draw an accurate and logical bridge from the evidence to her conclusion that these impairments warranted no RFC accommodation. *See Moon*, 763 F.3d at 721-22 (faulty analysis of evidence related to migraines was not "logically connected" to RFC). Accordingly, the Court recommends remand for reconsideration and a clearer explanation of any symptoms and limitations caused by Plaintiff's lytic lesions and migraines and whether they warrant additional RFC accommodation. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (remanding for reconsideration of how headaches and blurred vision affected claimant's ability to work); *Lashaun B. v. Saul*, No. 2:19-cv-38, 2019 WL 6112561, at *7 (N.D. Ind. Nov. 18, 2019) ("the ALJ was required to determine the frequency, duration, and limiting effects of migraines/headaches") (citing *Indoranto* and *Moon*). And to the extent any additional RFC accommodation is determined, the ALJ would also be required to apprise any VE relied upon of such limitation(s). *Indoranto*, 374 F.3d at 474. This is not to say that an additional RFC accommodation is required, only that the ALJ failed to address the evidence discussed above, and otherwise support or explain her finding that these impairments cause no symptoms. Whether any such symptoms require RFC accommodation would be for the ALJ to determine during any remand ordered.

## II. The Sit-Stand Option Added by the Appeals Council

Plaintiff challenges the sit-stand option that the Appeals Council added to his RFC in two respects. As explained above, the Appeals Council agreed with the ALJ that Plaintiff is capable of

light exertional work, but added a sit-stand option "where [Plaintiff] is able to alternate sitting and standing, standing for ten minutes and sitting for fifteen minutes, alternating throughout the workday without being off task." (AR 6). Plaintiff first contends that this option "effectively prevents him from complying with the standing and walking requirements of light work because he would be sitting for over 50% of the workday, . . . likely below the threshold contemplated by the statute when it references standing or walking 'a good deal' of the day,'" and thus, "much closer to a sedentary exertional level." (ECF No. 19, at 15-16 (quoting 20 C.F.R. § 404.1567(c)). And second, Plaintiff contends that the on-task requirement included in the sit-stand option failed to address his need to walk during the "standing" period, as well as VE testimony indicating that walking away from the work station during this period would render an employee off task and preclude employment. (*Id.*). While the Court disagrees that the sit-stand option is necessarily incompatible with light work, it agrees with Plaintiff that remand is required for reconsideration and a clear explanation of the basis for the on-task requirement included in that option.

Many courts have considered and rejected the argument that a sit-stand option transforms a light exertional RFC into a sedentary exertional RFC. *See, e.g.*, *Devilbiss v. Saul*, 19-C-932, 2020 WL 5645691, at *6-7 (E.D. Wis. Sept. 22, 2020) (collecting decisions). Rather, as the Commissioner explains, SSR 83-12 provides that in "cases of unusual limitation of ability to sit or stand," and particularly those involving the need for a sit-stand option, a vocational expert "should be consulted to clarify the implications for the occupational base." (D's Mem. at 14, ECF No. 22 (quoting SSR 83-12, 1983 WL 31253, at *4). "Nothing in this Ruling suggests that an at-will sit/stand option transforms a light job into a sedentary one." *Devilbiss*, 2020 WL 5645691, at *7. The Court agrees with the reasoning in such decisions that a sit-stand option is not necessarily incompatible with light work, and that an ALJ may determine whether a claimant requiring a sit-

stand option is capable of light exertional work after consulting with a vocational expert on that issue. The Court therefore rejects Plaintiff's argument that the sit-stand option here, by itself, "effectively prevents him from complying with the standing and walking requirements of light work." (P's Brief at 15-16, ECF No. 19).

The additional on-task requirement included in Plaintiff's sit-stand option is a different matter. As noted above, the sit-stand option that the Appeals Council added to Plaintiff's RFC allows him to alternate standing for ten minutes and sitting for fifteen minutes throughout the workday "without being off task." (AR 6). The Commissioner argues the ALJ followed SSR83-12 by consulting the VE about a sit-stand option requiring such alternated sitting and standing times, and the VE confirmed that the representative jobs discussed in the ALJ's decision still could be performed even while alternating sitting and standing for such periods. (D's Mem. at 14, ECF No. 22). But as Plaintiff argues, neither the ALJ nor the Appeals Council addressed Plaintiff's testimony that he would need to walk during the stand portion of the option, rather than stand in a stationary spot, or the VE's testimony that walking away from the workspace during the stand portion of the option could require a worker to be off-task, and therefore be work preclusive. (P's Brief at 16, ECF No. 19 (citing AR 67, 93)). While the Commissioner argues the ALJ discredited Plaintiff's claim that he would need to walk during the stand portion of the option (ECF No. 22 at 13-14), neither the ALJ nor the Appeals Council addressed that claim, or the on-task implications of such a need to walk during the stand portion of the option noted by the VE. Absent such explanation, neither decision drew a logical bridge between the evidence and the on-task requirement included in Plaintiff's RFC. *See Diaz v. Berryhill*, 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (where RFC required remaining on-task while exercising sit/stand option, ALJ's question to VE concerning off-task time indicated she "considered that issue in her

decision . . . but then she failed to provide any analysis of whether, for example, the claimant was limited by any off-task allowances and, if so, for how long").

Accordingly, the Court recommends remand also for a clearer explanation of the on-task requirement included in the sit-stand option. But this is not to suggest that the on-task requirement could not be supported or that a disability finding would be required. Perhaps there is good reason to discredit Plaintiff's claim that he would need to walk during the stand portion of the option, or perhaps such walking would not require leaving the workstation or otherwise interfere with the on-task requirement. Those issues would be for the ALJ to consider and explain during any remand ordered, after consulting with the VE. The Court concludes only that the ALJ and Appeals Council failed to address Plaintiff's testimony on this issue, as well as the VE's testimony concerning the potential impact of such an accommodation, and that the decision on any remand "should take care that it builds a logical bridge" from the evidence to its conclusions. *See Ghiselli v. Colvin*, 837 F.3d 771, 779 (7th Cir. 2016) (noting that error may ultimately be harmless, but requiring clearer explanation of on-task requirement in sit/stand option in case remanded on other grounds).

**III. Plaintiff's Remaining Arguments**

Plaintiff's remaining arguments challenge the ALJ's assessment of his physical limitations and daily activities. Regarding his physical limitations, Plaintiff argues the ALJ failed to address evidence contrary to her RFC assessment, including regarding Plaintiff's thoracic tenderness, alleged hand impairments, and left shoulder osteoarthritis. (P's Brief at 13-14, ECF No. 19). As the Commissioner argues, however, the ALJ expressly considered Plaintiff's spinal and shoulder tenderness and upper extremity strength, and discussed extensive related evidence. (D's Mem. at 8-11, ECF No. 22). This Court may not reweigh that evidence based on isolated records or subjective complaints now cited by Plaintiff. *Moore*, 743 F.3d at 1121. As importantly, Plaintiff

identifies no particular functional limitations that should have been included in his RFC based on any supposedly neglected evidence. Instead, he posits "it is impossible to know if additional limitations should be included in the RFC to account for these impairments, and if so, what those limitations might reasonably include." (ECF No. 19, at 14). This is insufficient to demonstrate reversible error. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations . . . because he hypothesizes none."); *Davis v. Berryhill*, 723 F. Appx 351, 356 (7th Cir. 2018) (plaintiff waived RFC challenge based on fibromyalgia by failing to "suggest what limitations should have been included").

Plaintiff similarly argues that the ALJ failed to consider some of the problems Plaintiff encounters performing daily activities that are noted in his function reports, such as challenges cooking, showering, and putting on shoes. (P's Brief at 18, ECF No. 19). But while the ALJ was required to consider such impediments, the failure to mention them "was not 'so patently wrong' as to require reversal," especially here, where Plaintiff's hearing testimony confirmed his ability to perform these activities albeit with some difficulty. (AR 60). *See also Deborah M. v. Saul*, 994 F.3d 785, 791 (2021) ("the ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal"). That said, Plaintiff's further argument that the ALJ improperly equated Plaintiff's ability to perform certain daily activities with an ability to work full-time has some merit. (P's Brief at 17-18, ECF No. 19). As Plaintiff argues, while it is clearly appropriate for an ALJ to consider a claimant's daily activities when assessing his subjective pain and other limitations, it is inappropriate to equate such activities with full time employment. (*Id.*). The Commissioner does not dispute this principle, but argues the ALJ did not violate it here, and instead properly "found that Plaintiff's activities showed that his functional abilities were not as limited as he alleged." (D's Mem. at 12, ECF No. 22). But while

the ALJ did conclude that "the claimant's ability to participate in such activities diminishes the claimant's allegations of disabling functional limitations," the ALJ first found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 32).

This explicit finding improperly equated the activities referenced with full-time work, contrary to well settled Seventh Circuit Precedent. *See Jeske v. Saul*, 955 F.3d at 583, 592 (7th Cir. 2020) ("An ALJ may not equate activities of daily living with those of a full-time job.") (citing *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("we have cautioned ALJs not to equate such activities with the rigorous demands of the workplace") (citing Seventh Circuit decisions)). Accordingly, the Court further recommends that the ALJ also reconsider on remand Plaintiff's daily activities and the extent to which they corroborate or discredit his claims of pain and other limitations, and the impact of such pain and limitations on Plaintiff's RFC. But again, this is not to say that any change in Plaintiff's RFC would be required. As the Commissioner fairly argues, the ALJ did not rely exclusively on Plaintiff's daily activities when assessing those claims. (D's Mem. at 11-12, ECF No. 22; *see also* AR 30-32 (discussing additional evidence)). It would be for the ALJ to determine during any remand whether the remaining evidence relied upon, with or without Plaintiff's daily activities, continues to discredit his subjective complaints.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court grant Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 19], reverse the decision of the Commissioner of the Social Security Administration, and remand for further proceedings.[3]

[3] Although Plaintiff alternatively asks the Court to reverse and remand for an award of benefits (P's Brief at 19, ECF No. 19), such an award is appropriate "only if all factual issues involved in the entitlement determination have been

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this June 29th, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

resolved and the resulting record supports only one conclusion–that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) ("Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings.") (citing 42 U.S.C. § 405(g)). As explained throughout this Report, this Court recommends remand for further proceedings (not an award of benefits), as it is not clear on the current record that an award of benefits is required.